**FILED**
**U.S. District Court**
**District of Kansas**
07/06/2026
**Clerk, U.S. District Court**
**By:** SND **Deputy Clerk**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

AHMAD BEY,

      **Plaintiff,**

      v.                    **CASE NO. 26-3117-JWL**

TYLER CLARK, et al.,

      **Defendants.**

**MEMORANDUM AND ORDER TO SHOW CAUSE**

Plaintiff Ahmad Bey is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Second Amended Complaint that are discussed herein. Plaintiff is also given the opportunity to file a third amended complaint to cure the deficiencies.

**I. Background**

Plaintiff filed this civil rights action on March 17, 2026, in the District Court of Butler County, Kansas. (Doc. 1–1.) The matter was removed to this Court on May 5, 2026, pursuant to 28 U.S.C. §§ 1441 and 1446. (Doc. 1.) Although Plaintiff is currently incarcerated at the Lansing Correctional Facility in Lansing, Kansas ("LCF"), his claims arose during his incarceration at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"). On May 6, 2026, the Court entered a Memorandum and Order (Doc. 3) granting Defendants an opportunity to respond to Plaintiff's three pending motions for preliminary injunctions and staying the answer deadline pending further order of the Court. (Doc. 3.) Defendants filed their response (Doc. 4), and Plaintiff filed a reply (Doc. 29). Plaintiff then filed six additional motions seeking preliminary injunctions (Docs. 8, 9, 10, 30, 31, 32). This matter is before the Court for screening under 28 U.S.C. § 1915A and on Plaintiff's pending motions.

1

## II.  Nature of the Matter before the Court

On April 17, 2026, Plaintiff filed a Second Amended Petition in state court. (Doc. 1–1, at 180.)  The Court will refer to it as the Second Amended Complaint ("SAC").    Plaintiff alleges that Defendants have violated his rights by:  1) confiscating Plaintiff's personal property without due process of law and in violation of his right to equal protection; 2) substantially burdening his ability to practice his religion; and 3) actively obstructing his fundamental right of access to the courts by arbitrarily revoking his approved private investigator visits and interfering with his privileged legal mail, all without the notice and opportunity to be heard required by the Fourteenth Amendment.  (Doc, 1–1, at 181.)

As Count I, Plaintiff alleges that he was deprived of due process in violation of the Fourteenth Amendment.  *Id*. at 195.  Plaintiff alleges that on March 4, 2026, staff at EDCF took his personal property from his cell and told Plaintiff it was due to his refusal to take a cellmate in violation of an "internal guideline."  *Id*. at 187.  Plaintiff alleges that the property taken included a personal tablet with charger, tv, radio, ice chest, various bowls and silverware, cups, hygiene supplies, wedding ring, shorts, headphones, and various commissary items.  *Id*.  Plaintiff was told that he would not receive his property back if he did not take a cellmate.  *Id*.   Plaintiff alleges that he was unable to properly grieve the issue, and that the internal guideline is a secret, unwritten policy.  *Id*.

As Count II, Plaintiff alleges that the confiscation of his property violated due process and § 1983.  *Id*. at 197. Plaintiff alleges that he was not provided with notice and an opportunity to be heard prior to the confiscation of his property.  *Id*.  Plaintiff alleges that Defendants cited a regulation concerning interference with cell doors and visibility as a pretext for confiscating his property.  *Id*.  Plaintiff claims that because he was forced to respond to a baseless and irrelevant

2

legal pretext, he was denied the opportunity to be heard on the actual reason for the confiscation—the enforcement of a secret, unpublished "internal guideline." *Id*.

As Count III, Plaintiff alleges a violation of his free exercise rights under the First Amendment and RLUIPA. *Id*. at 198. Plaintiff claims that the confiscation of his food items directly and substantially interfered with his ability to maintain adequate nutrition while observing the month of Ramadan. *Id*. at 189. Plaintiff states that he is a practicing Muslim, and the confiscated food items "were essential for him to supplement the standard facility meals, which are often nutritionally inadequate for his religious fast." *Id*.

As Count IV, Plaintiff alleges a violation of his right to court access. *Id*. at 198. Plaintiff alleges that he is preparing a motion to vacate his sentence pursuant to K.S.A. 60-1507 and he "retained the service of his wife, Mrs. Janie Bey, a licensed investigator, to act as his essential agent." *Id*. at 189. Plaintiff claims that professional visitation between him and his wife was approved on December 17, 2025, and was arbitrarily revoked on January 2, 2026. *Id*. A letter was sent to Mrs. Bey stating that the visits were cancelled due to a conflict of interest with the facility, and she was told to continue her investigation for Plaintiff through the postal service. *Id*. Mrs. Bey was later told that her visits were not approved by the EDCF warden. *Id*. at 190. Plaintiff's attempts to resolve the issue through the grievance process were unsuccessful. *Id*.

Plaintiff claims that the alleged "conflict of interest" was a pretext and violated his due process rights due to the vagueness of the rule. *Id*. at 199. Plaintiff claims that it was only after Defendants discovered that Mrs. Bey was Plaintiff's wife and that she was helping him prepare his K.S.A. 60-1507 did they invent the conflict of interest. *Id*. Plaintiff claims that revoking his visitation deprived him of a state-conferred liberty interest without due process. *Id*. at 200.

3

Plaintiff similarly claims that his wife was previously allowed to send mail that was marked as privileged, but after Defendants discovered she was Plaintiff's wife, they told Plaintiff that correspondence with Mrs. Bey did not qualify as "legal mail," and had to be sent through regular, non-privileged mail, subject to being opened, read, and censored. *Id*. at 191. Plaintiff alleges that this allows Defendants to monitor his strategy for this § 1983 action against them. *Id*. at 201. Plaintiff claims that as a result of Defendants' revocation of his visits and interference with his privileged mail, his "efforts to investigate and prepare his K.S.A. 60-1507 motion have been completely halted." *Id*. at 192.

As Count V, Plaintiff alleges replevin under Kansas state law, citing K.S.A. 60-1005. *Id*. at 201. Plaintiff alleges that because the seizure of his property was unconstitutional, the Defendants' continued possession of the property constitutes wrongful detention. *Id*. at 202.

As Count VI, Plaintiff alleges an equal protection violation based upon the seizure of his personal property. *Id*. Plaintiff claims that "upon information and belief," other inmates housed in segregation without a cellmate were not subjected to the same property confiscation. *Id*. at 189, 202.

As Count VII, Plaintiff alleges retaliation in violation of the First Amendment. *Id*. at 203. Plaintiff claims that he is "justifiably concerned that Defendants may take adverse action against him for initiating this lawsuit." *Id*. Plaintiff claims that "[t]his risk is particularly acute given that Defendants' prior actions were taken without issuing any formal disciplinary charges." *Id*. at 204. Plaintiff fears that Defendants "may now attempt to retroactively justify their illegal actions by issuing baseless disciplinary reports in retaliation for Plaintiff seeking to vindicate his rights." *Id*.

Plaintiff names the Warden at EDCF and other staff from EDCF as Defendants. Plaintiff seeks declaratory, injunctive, compensatory, nominal, and punitive damages. *Id*. at 204–05. For

injunctive relief, Plaintiff seeks to order Defendants to:

> 1. Immediately return all of Plaintiff's confiscated personal property;
> 2. Immediately reinstate the previously approved professional visitation between Plaintiff and his licensed private investigator, Mrs. Janie Bey;
> 3. Cease all interference with Plaintiff's privileged legal mail and work product from his investigator and henceforth handle such mail in accordance with established law and K.A.R. 44-12-601; [and]
> 4. Refrain from taking any retaliatory action against Plaintiff for initiating this legal action.

*Id*. at 204.

## III.  Statutory Screening of Prisoner Complaints

Plaintiff filed this action in state court, and Defendants removed the action to this Court. Because Plaintiff is a prisoner and his complaint seeks redress from a governmental entity or officer or employee of a governmental entity, it is subject to screening under 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915A(a) ("The Court shall review . . . as soon as practical after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."); *see also Crosby v. U.S. Attorney's Office*, 2020 WL 1271825, at *3 (D. Kan. 2020) (screening amended complaint after removal from state court); *King v. Hill*, 2022 WL 1185124, at *3 (S.D. Ill. 2022) (finding that claims properly removed to the federal court were subject to screening under Section 1915A); *Biron v. Carvajal*, 2021 WL 3047250, at *35 (D. Minn. 2021) (stating that "the Court agrees with Defendants that cases removed from state court are subject to screening under § 1915A" and "courts in this District have done so"); *Johnson v. Bedwell*, 2017 WL 4539918, at *1 (S.D. Ind. 2017) ("Although the filing fee was paid at the time this action was removed to this Court, this action is still subject to screening under 28 U.S.C. § 1915A.").

The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that

are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163

(10th Cir. 2007).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

## IV.  Discussion

### A.  Due Process - Personal Property

Plaintiff's claims in Count I and II allege a due process violation based on the confiscation of his personal property at EDCF.  Plaintiff alleges that on March 4, 2026, staff at EDCF took his personal property from his cell and told him it was due to his refusal to take a cellmate in violation of an "internal guideline."  Plaintiff alleges that the property taken included a personal tablet with charger, tv, radio, ice chest, various bowls and silverware, cups, hygiene supplies, wedding ring, shorts, headphones, and various commissary items.

Plaintiff has also filed motions for preliminary injunctions seeking the return of his property.  (Docs. 9, 11, 31.)  The Court granted Defendants an opportunity to respond to the motions for preliminary injunctions that were pending when this matter was removed to this Court. Regarding Plaintiff's personal property, Defendants responded that:  enjoining Defendants from taking *any* of Plaintiff's personal property would encroach on Defendants' obligation and authority to ensure safety and security within its facilities; Plaintiff failed to fully exhaust his administrative remedies by submitting his grievance to the Warden and Secretary of Corrections; and "Plaintiff was transferred to LCF on April 14, 2026, and his personal property [was] returned to him upon accepting a cellmate."  (Doc. 4, at 4–7.)  Regarding Plaintiff's claim that he did not have his commissary food items to supplement meals during Ramadan, Defendants responded that:

> Plaintiff alleges that the confiscation of his commissary items impacted his ability to receive adequate nutrition while fasting during the month of Ramadan.  While Plaintiff may have wanted to supplement his meals with commissary during Ramadan, the KDOC

> and EDCF ensure that residents practicing their Muslim faith are provided meals outside of daylight hours and that their calorie count meets the daily minimum requirements for all residents. . . . The holy month of Ramadan ended on or about March 19, 2026, and Plaintiff does not allege any other impediment upon his religious beliefs, beyond his temporarily confiscated commissary items.

*Id*. at 6, 7.  The response also provides that "[m]ost KDOC facilities require residents to be double celled and residents who refuse to take a cell mate may be subject to property restrictions. All residents are subject to property limits pursuant to IMPP 12-120A." *Id*. at 6.

In response to Defendants' response, Plaintiff filed a "Motion for Preliminary Injunction – Regarding Personal Property (Addressing Defendants' Response to Motions)" (Doc. 31).  Plaintiff claims that this revised motion addresses and rebuts Defendants' argument in their response that his claims regarding his property are moot.  (Doc. 31, at 2.)  Plaintiff disputes that his request for injunctive relief is moot, arguing that he still has a broken television and an undelivered book. (Doc. 31, at 3.)   Plaintiff also argues that the confiscation of his property—like the denial of legal mail and professional visitation—was not in compliance with regulations.  *Id*. at 8.  Plaintiff seeks an order requiring Defendants to immediately replace or repair Plaintiff's television, immediately provide Plaintiff with the legal textbook he ordered, and "cease and desist from confiscating Plaintiff's personal or religious property without first providing written notice of a specific rule violation and a[n] opportunity for a hearing." *Id*. at 10.

Plaintiff's motions seeking injunctive relief regarding his property are denied and Plaintiff's property claim is subject to dismissal.  Deprivations of property do not deny due process as long as there is an adequate post-deprivation remedy.  A due process claim will arise only if there is no such procedure or it is inadequate. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Smith v. Colorado Dept. of Corr.*, 23 F.3d 339, 340 (10th Cir. 1994) ("Fourteenth Amendment due process guarantees pertaining to property are satisfied when an adequate, state

postdeprivation remedy exists for deprivations occasioned by state employees.").

Kansas prisoners have an adequate state post-deprivation remedy. *See generally, Sawyer v. Green*, 316 F. App'x 715, 717, 2008 WL 2470915, at *2 (10th Cir. 2008) (finding Kansas county prisoner could seek relief in state courts to redress alleged deprivation of property). Plaintiff has failed to allege that an adequate post-deprivation remedy was unavailable.

"In the prison context, '[a] protected liberty interest only arises from a transfer to harsher conditions of confinement when an inmate faces an atypical and significant hardship in relation to the ordinary incidents of prison life.'" *Requena v. Roberts*, 893 F.3d 1195, 1217 (10th Cir. 2018) (citation omitted). Where an inmate argued that he was prohibited from possessing a television in his cell, the Tenth Circuit held that "restrictions on an inmate's telephone use, property possession, visitation and recreation privileges are not different in such degree and duration as compared with the ordinary incidents of prison life to constitute protected liberty interests under the Due Process Clause." *Id*. at 1218 (quoting *Marshall v. Morton*, 421 F. App'x 832, 838 (10th Cir. 2011) (unpublished)). Because an adequate, state post-deprivation remedy exists, and because restrictions on property possession are part of the ordinary incidents of prison life, Plaintiff must show good cause why his due process claims in Counts I and II should not be dismissed for failure to state a claim.

Plaintiff's motions seeking a preliminary injunction regarding his property are denied. To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004).

Plaintiff's claim is subject to dismissal and therefore he has not shown a likelihood of success on the merits.  He has also failed to show a likelihood that he will suffer irreparable harm in the absence of a preliminary injunction.  "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted).  A preliminary injunction is only appropriate "to prevent existing or presently threatening injuries.  One will not be granted against something merely feared as liable to occur at some indefinite time in the future." *State of Connecticut v. Commonwealth of Massachusetts,* 282 U.S. 660, 674 (1931).  It appears that all of Plaintiff's property that was confiscated has been returned.  He now argues that his television is broken, and he has not received a book that he ordered.  Plaintiff should utilize the administrative grievance procedures regarding his book and the repair or replacement of his television.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).  Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation.  18 U.S.C. § 3626(a)(2).  Finally, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above. *Little*, 607 F.3d at 1251.  Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they

are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal. Plaintiff's motions seeking a preliminary injunction regarding his property (Docs. 9, 11, 31) are denied.

### B.  First Amendment and RLUIPA

Plaintiff asserts a First Amendment claim as well as a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") (42 U.S.C. § 2000cc *et seq.*). "To state a valid constitutional claim, a prisoner must allege facts showing that officials substantially burdened a sincerely held religious belief." *Williams v. Hansen*, 5 F.4th 1129, 1133 (10th Cir. 2021) (citing *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)). "Similarly, to state a claim under RLUIPA, a plaintiff must plead that 'he wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government.'" *Blair v. Raemisch*, 804 F. App'x 909, 916–17 (10th Cir. 2020) (quoting *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010)). "If a substantial burden is shown, officials must identify a legitimate penological interest." *Williams*, 5 F.4th at 1133 (citing *Kay*, 500 F.3d at 1218).

Our Circuit has articulated the following test to determine when the government places a substantial burden on a plaintiff's free exercise of religion:

> The government substantially burdens a person's religions exercise ... when it (1) "requires participation in an activity prohibited by a sincerely held religious belief," (2) "prevents participation in conduct motivated by a sincerely held religious belief," or (3) "places substantial pressure on an adherent either not to engage in

11

> conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief."

*Blair*, 804 F. App'x at 916–17 (quoting *Abdulhaseeb*, 600 F.3d at 1315). The test set forth above for a First Amendment claim also applies to claims under RLUIPA. *See id*. (articulating Tenth Circuit's three factor RLUIPA test and explaining that the RLUIPA "test is grounded in the Supreme Court's interpretation of substantial burden under the First Amendment's Free Exercise Clause, . . . and thus is applicable to [plaintiff's] First Amendment claim as well.").

Plaintiff alleges that he was unable to supplement the meals provided during Ramadan with commissary food items. As Defendants noted in their response to Plaintiff's motions for injunctive relief, the facility provides meals during Ramadan and Ramadan ended on March 31, 2026.

Plaintiff has failed to show a substantial burden. In *Strope*, the Tenth Circuit reasoned as follows:

> Illustrating the distinction between substantial burden and inconvenience, we held (1) the flat denial of a halal diet with approved meats was actionable, *id.* at 1316–20, but (2) an incident (the panel concurrence notes "sporadic incidents") in which a prisoner's meal was rendered inedible by service of prohibited items contaminating his tray was not actionable, *id*. at 1320–21; *id*. at 1325; see also *Gallagher*, 587 F.3d at 1070 (holding isolated violation of kosher restrictions did not support Free Exercise claim). We "assume[d] that as the frequency of presenting unacceptable foods increases, at some point the situation would rise to the level of a substantial burden," but that level had clearly not been reached.

*Strope v. Cummings*, 381 F. App'x 878, 881 (10th Cir. 2010) (unpublished) (citing *Abdulhaseeb*, 600 F.3d at 1321). In sum, mere inconvenience, negligence, and isolated or sporadic incidents are not sufficient to show a substantial burden. Plaintiff should show good cause why his First Amendment and RLUIPA claims in Count III should not be dismissed for failure to state a claim.

### C. Court Access and Due Process

As Count IV, Plaintiff alleges that he has been denied court access and due process due to

the facility treating mail from Mrs. Bey as non-privileged mail and denying him professional visitation with Mrs. Bey.  It is well-established that a prison inmate has a constitutional right of access to the courts.  However, it is equally well-settled that in order "[t]o present a viable claim for denial of access to courts, . . . an inmate must allege and prove prejudice arising from the defendants' actions."  *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of standing.").

An inmate may satisfy the actual-injury requirement by demonstrating that the alleged acts or shortcomings of defendants "hindered his efforts to pursue" a non-frivolous legal claim.  *Lewis*, 518 U.S. at 351-53; *see also Burnett v. Jones*, 437 F. App'x 736, 744 (10th Cir. 2011) ("To state a claim for violation of the constitutional right to access the courts, a prisoner 'must demonstrate actual injury . . .—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement.'") (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010)).

The Supreme Court plainly held in *Lewis* that "the injury requirement is not satisfied by just any type of frustrated legal claim."  *Lewis*, 518 at 354.  Rather, the injury occurs only when prisoners are prevented from attacking "their sentences, directly or collaterally" or challenging "the conditions of their confinement."  *Id.* at 355.  "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  *Id*.  (emphasis in original); *see also Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir. 1995) ("[A]n inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus.") (citations omitted).

Plaintiff has failed to show an actual injury.  He clearly was able to file this action regarding his conditions of confinement, as well as multiple motions.  He claims that he had to halt his preparation of an action under K.S.A. 60-1507.  The Kansas Supreme Court issued their mandate affirming Plaintiff's conviction on April 29, 2026.  *See State v. Bey*, Case No. 2019-CR-003876, Index 131 (District Court of Sedgwick County, Kansas); *see also* K.S.A. 60-1507(f)(1)(A) ("Any action under this section must be brought within one year of:  (A) The final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction."); *see also Butler v. Becker*, 2020 WL 1528501, at *3 (D. Kan. 2020) (finding no injury from delay in mail where it did not qualify as "legal mail" and "[t]he allegations in the Complaint do not show that Defendants' alleged actions caused Plaintiff to miss any court deadline, have any legal claim dismissed, or lose the ability to pursue any particular defense"). Plaintiff has not alleged that he is unable to timely pursue a K.S.A. 60-1507 action.  Although he prefers to receive mail from Mrs. Bey as legal mail, he is still able to receive non-legal mail related to his criminal case.  In their response to Plaintiff's motions seeking injunctive relief, Defendants state that "Ms. Bey may, and does, communicate with Plaintiff by telephone, mail, and through messages sent and received through Plaintiff's KDOC tablet."  (Doc. 4, at 9.)  The right to access the courts is "only [the right] to present . . . grievances to the courts," and does not require prison administrators to supply resources guaranteeing inmates' ability "to litigate effectively once in court" or to "conduct generalized research." *Lewis*, 518 U.S. at 354, 360.  Plaintiff should show good cause why his court access claim should not be dismissed for failure to state a claim.

Plaintiff also alleges that his mail was rejected as legal mail and his visitation was revoked without due process. Liberty interests which are protected by the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence in such an

14

unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).

Plaintiff acknowledges that he was notified that mail from Mrs. Bey did not qualify as legal mail. He claims that "Defendants instructed Plaintiff that all correspondence with his investigator must be sent through regular, non-privileged mail, subject to being opened, read, and censored." (Doc. 1–1, at 191.) He also alleges that he filed grievances regarding the issue. Plaintiff alleges that he was told that the reclassification of his mail was due to a "conflict of interest," which he claims is not a legitimate defense. *Id*. at 199. Plaintiff claims this violates due process because the "conflict of interest" defense is a standardless process that interferes with constitutionally protected communications. *Id*. However, there is a regulation directly defining what constitutes legal, official, and privileged mail. In fact, in his motion seeking a preliminary injunction, Plaintiff seeks an order requiring Defendants to process his mail in strict accordance with K.A.R. 44-12-601. (Doc. 13, at 64.)

K.A.R. 44-12-601 provides the following definitions for inmate mail:

(a) Definitions.
> (1)(A) "Legal mail" means mail affecting the inmate's right of access to the courts or legal counsel. This term shall be limited to letters between the inmate and any lawyer, a judge, a clerk of a court, or any intern or employee of a lawyer or law firm, legal clinic, or legal services organization, including legal services for prisoners.
> (B) "Official mail" means any mail between an inmate and an official of the state or federal government who has authority to control, or to obtain or conduct an investigation of, the custody or conditions of confinement of the inmate.
> (C) "Privileged mail" means any mail between the inmate and the inmate's physician, psychiatrist, psychologist, or other licensed mental health therapist.

Kan. Admin. Regs. 44-12-601(a)(1). Subsection (b)(4) provides that a "[v]iolation of mail

regulations of the department of corrections, orders of the warden, or the laws of Kansas or the United States may result in additional mail restrictions upon the offender that are sufficient to prevent the continuation or reoccurrence of the violation." K.A.R. 44-12-601(b)(4). "Any incoming or outgoing mail other than legal, official, or privileged mail may be inspected or read at any time." *Id*. at (6). Plaintiff has failed to show that his mail from Mrs. Bey meets the definitions in K.A.R. 44-12-601(a)(1).

Plaintiff has failed to allege a due process violation regarding visitation. "Withdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior." *Coleman v. Long*, 772 F. App'x 647, 650 (10th Cir. 2019) (unpublished) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 134, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003)). The "withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline . . . . is not a dramatic departure from accepted standards for conditions of confinement." *Id*. (citation omitted); *see also Bastian v. Rivera*, 2021 WL 3688435, at *18 (D. N.M. 2024) (stating that the "denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause.") (citing *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 461 (1989) (quotation marks omitted); *see also Gray v. Bruce*, 26 F. App'x 819, 824 (10th Cir. 2001) ("[N]either prisoners nor their visitors have a constitutional right to unfettered visitation.")).

"It cannot 'seriously be contended . . . that an inmate's interest in unfettered visitation is guaranteed directly by the Due Process Clause' of the Fourteenth Amendment." *Coleman*, 772 F. App'x at 649 (citation omitted). "The denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence.'" *Id*. (citation omitted). "Accordingly, Plaintiff does not derive a liberty interest in visitation and telephone privileges from

16

the Constitution." *Id*. (citing *see, e.g., Cleveland v. Martin*, 590 F. App'x 726, 732 (10th Cir. 2014); *Rackley v. Blevins*, 596 F. App'x 620, 624 (10th Cir. 2014)).  Since *Sandin*, the Tenth Circuit has "consistently stated in unpublished opinions that inmates lack a liberty interest in visitation." *Cleveland*, 590 F. App'x at 732 (citing *Marshall v. Morton*, 421 F. App'x 832, 838 (10th Cir. 2011) (unpublished)).

Kansas has not created a liberty interest through state regulations.  *Lewis v. Zmuda*, 2023 WL 8005022, at *10 (D. Kan. Nov. 17, 2023), *aff'd* 2025 WL 1215505 (10th Cir. April 28, 2025) (citing *see Grossman v. Werholtz*, 264 P.3d 1060, 2011 WL 6385650, *3 (Kan. App. 2011) ("[I]n Kansas, even if a statute or regulation mandates that punishment will not occur absent specified substantive predicates, there is no due process violation unless the resulting administrative punishment results in a significant and atypical hardship for the inmate over and above the inmate's underlying sentence." *Ramirez v. State,* 931 P.2d 1265, 1267 (Kan. App. 1997), *rev. denied* 262 Kan. 962 (1997))).

"In the absence of a liberty interest, [Plaintiff] is not entitled to the safeguards of due process." *Cleveland*, 590 F. App'x at 732 (citing *Fristoe v. Thompson,* 144 F.3d 627, 630 (10th Cir.1998) (recognizing that a due process claim cannot be maintained absent a protected liberty interest)).  Plaintiff should show good cause why his due process claim in Count IV should not be dismissed for failure to state a claim.

Plaintiff has also filed motions seeking injunctive relief regarding the reclassification of his legal mail as set forth in Count IV.  *See* Docs. 8, 13, 30, and 32.  Plaintiff has not shown that his mail from Mrs. Bey qualifies as legal mail.  Plaintiff claims that his wife is his "legally designated Power of Attorney and a licensed private investigator acting at his direction." (Doc. 13, at 62.)  In *Woodward v. Zmuda*, this Court found that mail from the plaintiff's attorney-in-fact did

not qualify as legal mail or for a privileged status.  *See Woodward v. Zmuda*, 2025 WL 1865494, at *8 (D. Kan. 2025).  This Court cited cases from other circuits holding "that mail between an inmate and his or her attorney-in-fact is not legal mail for the purpose of prison practices for handling legal mail."  *Id*. at *9 (citing *Langford v. Dzurenda*, 2020 WL 5761076, *1 (D. Nev. Sept. 26, 2020) (unpublished) (holding Mr. Langford had no plausible claim for relief based on the prison opening mail from Mr. Langford outside of the presence of the inmate for whom he was designated attorney-in-fact); *Lavine v. Clarke*, 2009 WL 1794484, *1-3 (W.D. Wash. June 23, 2009) (unpublished) (rejecting argument that inmate's letter to his wife, who served as his attorney-in-fact under a power of attorney, should be treated by prison officials as privileged legal mail)).  In *Woodward*, this Court adopted the rationale of one court that explained:

> [The] act of appointing [an individual] as an attorney in fact in a power of attorney does not transform [that individual] into an attorney licensed to practice law . . . so as to give rise to an attorney-client relationship and attendant benefits of attorney-client confidentiality and privilege and the rights afforded prisoners with respect to legal mail.

*Id*. (citing *Langford v. Dzurenda*, 2020 WL 6304205, *3 (D. Nev. Mar. 23, 2020) (unpublished report and recommendation adopted on Sept. 26, 2020)).  The same reasoning would apply in this case.

Plaintiff has not shown that mail from his wife—serving as his private investigator—meets the definition of legal mail, official mail, or privileged mail in K.A.R. 44-12-601(a)(1).  An inmate cannot change the status of his nonlegal mail into legal mail by falsely identifying it as legal mail. *Johnson v. Clark*, 2019 WL 13260146, at *6–7 (10th Cir. 2019) (unpublished) ("The fact that Mr. Johnson falsely labeled nonlegal mail as legal mail does not imbue it with otherwise-unavailable privileges and confidentiality."); *see also Robertson v. Lee*, 2019 WL 2924996, at *6 (D. Kan.

18

2019) (legal materials sent to inmate by mother did not qualify as legal mail despite sender's identification of mail as "legal mail").

Plaintiff has not shown that he is entitled to injunctive relief regarding the classification of his mail. Plaintiff's court access and due process claims are subject to dismissal and therefore he has not shown a likelihood of success on the merits. Considering the preliminary injunction standards set forth above, Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal. Plaintiff's motions seeking a preliminary injunction regarding his mail (Docs. 8, 13, and 30) are denied.

Plaintiff has also filed motions seeking to enjoin Defendants from denying Plaintiff's private investigator, Janie Bey, access to the correctional facility for purposes of conducting confidential legal visits. *See, e.g.,* Doc. 10, at 1. Plaintiff has failed to show that he is entitled to "professional" visitation rights with Mrs. Bey. He argues that his right to court access extends to necessary legal agents like investigators, citing *Smith v. Coughlin*, 748 F.2d 783 (2d Cir. 1984). *Smith* found that the refusal to allow the plaintiff to see paralegal personnel denied him effective assistance of counsel. *Id*. at 789. Plaintiff in this case does not suggest that his wife is employed by his lawyer or law firm. The Court has found that Plaintiff's court access claim is subject to dismissal.

In their response to Plaintiff's request for injunctive relief, Defendants claim that Plaintiff's assertion that Mrs. Bey does not pose a security risk is inconsistent with K.A.R. 44-7-104 and KDOC IMPP 10-113D, which proscribe visitation by individuals who worked within KDOC facilities in the preceding two years. (Doc. 4, at 9.) Defendants state that:

> Ms. Bey is a former employee of Centurion Health Services, the contract medical and behavioral health provider for the KDOC. Ms.

Bey worked at the Hutchinson Correctional Facility (HCF) in Reno County, Kansas, until her employment at HCF ended in February of 2025, when she was removed from the facility after admitting to an ongoing personal romantic relationship with Plaintiff. When her employment with KDOC ended, Janie Bey was known by the name Janie Cage.

*Id*.

Plaintiff's most recent motion for injunctive relief responds to Defendants' claim. *See* Motion for Preliminary Injunction Regarding Access to His Licensed Private Investigator (Addressing Defendants' Response) (Doc. 32). In response, Plaintiff argues that K.A.R. 44-7-104 has exceptions for visits in a "professional capacity" and for individual's related by marriage. The regulation provides in part that:

(5) Each individual who was an employee of a correctional facility, who regularly worked at a correctional facility as an employee of an entity under contract to provide services to the institution or facility, or who was a volunteer at a correctional facility shall meet the following conditions:

(A) Not be permitted to have visits with an inmate, in other than a professional capacity, for a minimum of two years after the employment or volunteer status is terminated, unless the individual is related by blood or marriage to the inmate. If the individual has a blood or marital relationship with an inmate, the ex-employee, ex-contract employee, or ex-volunteer may nonetheless be subject to the minimum two-year waiting period under the circumstance set forth in paragraph (a)(5)(B). Approval of visits after two years shall be at the discretion of the warden upon application of the inmate or ex-employee, ex-contract employee, or ex-volunteer. If the warden disapproves the visits, the inmate and ex-employee, ex-contract employee, or ex-volunteer shall be notified by the warden of the specific reasons for the denial; or

(B) if barred from a facility because of undue familiarity with an inmate or for trafficking in contraband, whether or not convicted of any criminal offense in connection with the instance of undue familiarity or trafficking, not be permitted to have visits with any inmate for a minimum of two years

20

> after the effective date of the order barring the individual from any facility. The approval of visits after two years shall be given at the discretion of the warden and with the approval of the deputy secretary of facilities management, upon application of an inmate or the ex-employee, ex-contract employee, or ex-volunteer.

Although Plaintiff relies on the exceptions in (A), it is not clear if Mrs. Bey was barred because of undue familiarity under (B).  Plaintiff alleges that he was told there was a "conflict of interest."

In his motion, Plaintiff seeks "an immediate injunction ordering Defendant's [sic] to approve professional visitation and privileged correspondence between Plaintiff and his licensed private investigator, Janie Bey."  (Doc. 32, at 2.)  Plaintiff has not shown that he is entitled to injunctive relief regarding professional visitation.  Plaintiff's court access and due process claims are subject to dismissal and therefore he has not shown a likelihood of success on the merits.  Considering the preliminary injunction standards set forth above, Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal.  Plaintiff's motions seeking a preliminary injunction regarding professional visitation with Mrs. Bey (Docs. 10, 12, and 32) are denied.

### D.  Replevin

Plaintiff asserts a claim for replevin under K.S.A. 60-1005, for the recovery of property wrongfully detained.  It appears that all of Plaintiff's property has now been returned.  He argues that his television—which is in his possession—was broken when returned to him.  He also alleges that a book he ordered has not been delivered to him yet.  He does not allege that the book is in Defendants' possession.  All of the named Defendants in this action are staff from EDCF and Plaintiff is currently housed at LCF.

21

Plaintiff's claims seeking the return of his property appear to be moot.  Regardless of the merits to any claim under the statute, Plaintiff is seeking to enforce a state statute.  This Court is not obliged to exercise supplemental jurisdiction over any state law claims, even if valid, given that Plaintiff's federal constitutional claims are subject to dismissal. *See* 28 U.S.C. § 1367(c)(3).

### E.  Equal Protection

Plaintiff claims in Count VI that the seizure of his personal property violated his right to equal protection.  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted).  Plaintiff does not allege that he was treated differently on the basis of class membership. To proceed upon an equal protection claim as a "class-of-one plaintiff," there must be allegations that others similarly situated in every material respect were intentionally treated differently and that the government's action was irrational and abusive. *Haik v. Salt Lake City Corp.*, 567 F. App'x 621, 631–32 (10th Cir. 2014); *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011).

Plaintiff has not referred specifically to any other inmate, and merely claims that "upon information and belief," other inmates housed in segregation without a cellmate were not subjected to the same property confiscation.  (Doc. 1–1, at 189, 202.)  Plaintiff has failed to allege that any other inmates were similarly situated in every material respect. *See Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) ("In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them.") (citation omitted).  Plaintiff should show good cause why his equal protection claim should not be dismissed for failure to state a claim.

22

**F. Retaliation**

Plaintiff fails to state a claim of retaliation. "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted). The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff's claims of retaliation are subject to dismissal for failure to allege adequate facts in support of the claims. Plaintiff's allegations regarding retaliation are speculative. He states that he merely fears retaliation in the future. Plaintiff should show good cause why his retaliation claim should not be dismissed for failure to state a claim.

23

## V.  Motions

The Court has already denied Plaintiff's motions seeking injunctive relief.  Plaintiff has also filed a Motion for Prophylactic Order Binding Successor Facility to Prevent Future Constitutional Violations (Doc. 27; Doc. 1–1, at 254–62).

Plaintiff seeks "preventative relief" by way of a clarification from the Court that any injunctive relief granted shall have statewide application to LCF, where Plaintiff was transferred to on April 11, 2026.  (Doc. 1–1, at 254.)  Plaintiff believes that LCF staff may continue to confiscate his legal mail, deny professional visitation with his wife, or deprive him of his property. *Id*. at 256.

This Court is denying Plaintiff's motions seeking injunctive relief.  Therefore, his motion seeking clarification that the injunctive relief granted has statewide application to LCF is also denied.

## VI.  Response and/or Amended Complaint Required

Plaintiff is required to show good cause why Plaintiff's claims should not be dismissed for the reasons stated herein.  Plaintiff is also given the opportunity to file a complete and proper third amended complaint upon court-approved forms that cures all the deficiencies discussed herein.  To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it.  Therefore, any claims or allegations not included in the amended complaint are no longer before the court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.

Plaintiff must write the number of this case (26-3117-JWL) at the top of the first page of the amended complaint and must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where Plaintiff must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation. Plaintiff is given time to file a complete and proper amended complaint in which Plaintiff (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant. If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, Plaintiff's claims may be dismissed without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's motions seeking preliminary injunctions (Docs. 8, 9, 10, 11, 12, 13, 30, 31, 32) are **denied.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Prophylactic Order (Doc. 27) is **denied.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **August 6, 2026,** in which to show good cause, in writing to the undersigned, why Plaintiffs' claims should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **August 6, 2026,** in which to file a complete and proper third amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated July 6, 2026, in Kansas City, Kansas.**

<u>**S/ John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**